IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

GREGORY BEDFORD,                          No. C 06-0748 CW (PR)

              Petitioner,           ORDER DENYING PETITION FOR WRIT
  v.                                      OF HABEAS CORPUS

ROBERT AYERS, Warden,

             Respondent.
_____/

    Petitioner Gregory Bedford, an inmate incarcerated at San Quentin State Prison, asks <u>pro se</u> for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Respondent Robert Ayers, Warden of San Quentin Prison, opposes the petition.[1]  Petitioner has filed a traverse.  Having considered all of the papers filed by the parties and the state court trial record, the Court DENIES the petition for a writ of habeas corpus.

BACKGROUND

I. Procedural History

    In May, 2001, a Santa Clara County jury found Petitioner guilty of resisting or deterring an executive officer in violation

---

[1] The caption in the docket indicates that Mr. Ornosai is the named Defendant in his capacity as warden of San Quentin Prison.  Steve Ornoski, whose name appears to have been misspelled in the docket, served as the warden at San Quentin Prison from July, 2005 to March, 2006.  The Clerk of the Court shall substitute Robert Ayers as the warden of San Quentin.  <u>See</u> Rule 25(d)(1) of the Federal Rules of Civil Procedure (if the public officer who is a party to a lawsuit ceases to hold office or resigns, the officer's successor is automatically substituted as a party).

**United States District Court**
For the Northern District of California

of California Penal Code § 69.  On June 1, 2001, in a separate bench trial, the court found true Petitioner's four prior strike allegations.  The Court sentenced him to state prison for twenty-five years to life pursuant to California's Three Strikes law.  On direct appeal, Petitioner argued that the trial court committed instructional error by using California Jury Instructions Criminal (CALJIC) No. 17.41.1.  On August 29, 2002, the California Court of Appeal wrote a reasoned decision rejecting Petitioner's argument and affirming his conviction.  On November 13, 2002, the California Supreme Court denied Petitioner's petition for review.

On May 20, 2003, Petitioner filed a state habeas petition in the Santa Clara County superior court raising two claims: (1) his sentence under California's Three Strikes law was unconstitutional because one his prior convictions was invalid[2] and (2) ineffective assistance of counsel (IAC) based on his trial counsel's failure to elicit exculpatory testimony from defense witness Chika Ugbaja.  On July 21, 2003, the superior court denied both claims, his second claim without prejudice, because he had not included with his petition all transcripts relating to Ms. Ugbaja's testimony at trial.  Petitioner then filed an amended state habeas petition, which included all portions of the trial transcript relevant to his second claim.  On October 8, 2003, the superior court denied Petitioner's second claim on its merits.

On October 30, 2003, Petitioner filed a state habeas petition

---

[2] Petitioner does not bring this claim in his federal habeas petition.

in the California court of appeal, raising the two claims previously raised in superior court.  The appellate court summarily denied the petition on January 14, 2004.  On February 2, 2004, Petitioner filed a state habeas petition in the California Supreme Court raising the same two claims.  On December 1, 2004, the state supreme court summarily denied the petition.

On January 7, 2005, Petitioner filed a second state habeas petition in the California Supreme Court raising two new claims: (1) insufficiency of the evidence because Petitioner's level of intoxication at the time of the incident showed that he lacked the requisite mens rea to commit the crime charged and (2) IAC based on his trial counsel's failure to move for a new trial under California Penal Code § 1181(6) and failure to request that the conviction be treated as a misdemeanor pursuant to California Penal Code § 17(b).[3]

On January 27, 2005, while his second state habeas petition was pending, Petitioner filed his first federal habeas petition. In it, he raised two of his claims: (1) the trial court erred in instructing the jury with CALJIC No. 17.41.1 and (2) IAC based on his trial counsel's failure to elicit exculpatory testimony from a defense witness.  Petitioner also indicated that he had pending a state habeas petition, which included the two other claims relating to insufficiency of the evidence.

---

[3] In his federal habeas petition, Petitioner did not base the IAC claim on his counsel's failure to request that the conviction be treated as a misdemeanor.

United States District Court
For the Northern District of California

On October 12, 2005, this Court dismissed the petition for failure to exhaust state judicial remedies and granted Petitioner leave to file an amended petition within thirty days.  On December 1, 2005, the Court dismissed the petition without prejudice after Petitioner failed to file an amended petition within the thirty-day deadline.  On December 14, 2005, the California Supreme Court summarily denied Petitioner's second state habeas petition.  On February 2, 2006, Petitioner filed the present federal habeas petition, raising four claims: (1) the trial court erred in instructing the jury with CALJIC No. 17.41.1, (2) IAC based on his trial counsel's failure to elicit exculpatory testimony from a witness, (3) insufficient evidence demonstrating that Petitioner had the specific intent to deter or resist an officer,[4] and (4) IAC based on his trial counsel's failure to move for a new trial due to insufficiency of the evidence.

On October 26, 2006, this Court ordered Respondent to show cause why the petition should not be granted.  On May 29, 2007, Respondent filed a motion to dismiss the petition as untimely.  On March 19, 2008, this Court denied the motion and ordered Respondent to file an answer within ninety days.  On May 6, 2008, Respondent

---

[4] In his traverse, Petitioner presents, for the first time, a claim that there was insufficient evidence demonstrating that he had the "ability to commit violent injury" when he allegedly threatened Officer Granado.  Because he failed to raise this claim in any of his state habeas petitions, it is unexhausted.  Petitioner may not raise a claim for the first time in his traverse.  Therefore, this claim will not be considered.  The Court notes nonetheless that Petitioner was convicted of attempting to resist or deter an executive officer, a crime which does not require the immediate ability to commit violent injury.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    filed an answer and, on July 9, 2008, Petitioner filed a traverse.

2    II. Factual History

3        At approximately four a.m. on May 27, 2000, Petitioner was

4    arrested for allegedly assaulting someone with a metal pipe.  State

5    Court Reporter's Transcript (RT) 242, 251, 254.  The arresting

6    officer, Richard Granado, placed handcuffs on Petitioner and

7    transported him to the San Jose Police Department pre-processing

8    center.  RT 254.  Officer Granado testified that Petitioner used

9    insults and profanity on the drive to the police station.  RT 255,

10   257.  He also testified that Petitioner accused him of having

11   "something against black people, and that that was why he had been

12   placed under arrest."  RT 258.

13       At 5:25 a.m., while being processed at the San Jose Police

14   Department, Petitioner had a blood sample drawn.  CT 30, RT 530.

15   This sample was then tested by analyst David Chen, who determined

16   that, at the time of the draw, Petitioner had a blood alcohol level

17   of .14.  RT 519.  Mercy Cardema, an expert criminalist from Santa

18   Clara County Crime Laboratory, testified that, at an alcohol level

19   of .14, "a person who has no tolerance to alcohol will exhibit

20   gross signs of intoxication such as loss of fine muscular

21   coordination and also some large muscle coordination like arms and

22   legs."  RT 524-25.  She also testified that the effects of alcohol

23   consumption on a person can differ according to genetic make-up,

24   tolerance levels, and the food contents in the person's stomach.

25   RT 521-22.  She attested that, in general, "the highest peak

26   alcohol concentration can be reached in about thirty to ninety

minutes after the last drink," and that thereafter, the alcohol concentration in the blood begins to fall.  RT 522.

After completing pre-processing at the San Jose Police Department, Officer Granado took Petitioner to the Santa Clara County Department of Correction lower booking area.  State Court Clerk's Transcript, Preliminary Examination (CT), 24.  Officer Granado testified that, as he and Petitioner approached the medical detectors located just outside the medical screening room, Petitioner said to him, "[Y]ou'll see."  RT 261.  When Officer Granado asked what he meant, Petitioner answered, "[Y]ou have a family don't you.  I wonder how you are without that badge."  RT 261.  Officer Granado asked if that statement was a threat, and Petitioner answered that he should take it anyway he wanted.  RT 261.  Petitioner then repeated, "[Y]ou'll see.  Just wait.  You'll see[.]"  RT 262, 265, 266.  At the trial, Officer Granado testified that, when Petitioner made these remarks, his voice was "stern, cold, angry . . . [n]ot raised in volume, but stern and serious."  RT 265.  He also stated that Petitioner's "eyes seemed wider."  RT 265.

Officer Granado removed Petitioner's handcuffs before he went through the metal detectors.  RT 266.  Petitioner was then taken into a small holding room where "prisoners are asked medical questions for screening," and the arresting officers "fill out paperwork."  RT 262.  The paperwork that Officer Granado filled out while he and Petitioner were in the room indicated that the time was 6:25 a.m.  RT 272.  Officer Granado also noted in his paperwork

United States District Court
For the Northern District of California

the comments Petitioner had made while being escorted to the metal detectors.  RT 264.

Officer Granado testified that, when they entered the holding room, another police officer, Officer Smith, was exiting the room. RT 267.  At the preliminary hearing, Officer Granado testified that at this point only he and Petitioner were in the room.  CT 31. Officer Granado also testified that, while they were alone in this room, he tried to "calm the situation" by telling Petitioner that "he was upset because he had been arrested and . . . not [to] talk about my family."  CT 27.  Officer Granado testified that Petitioner then looked at him and "with his left hand made a slashing motion across his neck from . . . left to right . . . and made a noise."  CT 27.  Petitioner then "opened his eyes wider and with his right hand punched his open left hand and told [Officer Granado] that [he] was a[n] . . . 'asshole,' and that [he] would see."  CT 29.  Officer Granado testified that he stopped doing his paperwork and told Petitioner that "what he had done was just a threat and that [he] was going to add that on the booking charges." CT 29.  Petitioner stated, "I don't know what you're talking about."  CT 29.

In his testimony at trial, Officer Granado described the above conversation and stated that, at the time Petitioner made these comments and gestures, "his eyes seemed wider, his jaw was clenched, his teeth were showing as he made the motion with his thumb slashing across the throat [and] [h]is voice was stern."  RT 269, 270.  Officer Granado did not specify at trial the exact

7

United States District Court
For the Northern District of California

location where Petitioner made these threatening gestures, only that they were made "prior to taking him to the processing area." RT 267.  Officer Granado also stated that, after completing his paperwork in the small booking room, it took "a couple of minutes" to "pass through into the processing area."  RT 272.

The processing area is the main booking room where medical personnel screen prisoners to determine whether they are injured, or have any allergies or other medical conditions.  RT 436-37.  At approximately 6:30 a.m., a nurse at the Santa Clara County jail, Chika Ugbaja, interviewed Petitioner in this main processing area and filled out two medical evaluation forms.  RT 431.  At the trial, Ms. Ugbaja testified that it takes about five minutes to fill out these forms.  RT 432.  She testified that she remembered interviewing Petitioner and that, during the time she filled out the forms, she did not witness him making any threats or acting in an uncooperative manner to her or to Officer Granado.  RT 432-433. She also testified that there were approximately three rooms between the room where she examined Petitioner and the "little rooms where incoming police officers with arresting persons can stop to begin doing their part of the booking."  RT 437.

Keith Norman, an investigator at the Santa Clara County Public Defender's Office, interviewed Ms. Ugbaja by telephone on February 23, 2001.  Mr. Norman's report states the following:

> Chika said that she was working at the main jail
> when [Petitioner] was brought in.  She stated
> that while she saw [Petitioner], he was
> "cooperative.  She stated at no point did
> [Petitioner] say anything threatening to an

officer or employee of the jail while she was
with him.  She did hear an officer who was with
[Petitioner] say "he threaten[ed] me."  She said
she never hear[d] any threats.  She then heard
[Petitioner] say, "I know what you are going to
do to me."  She then said she remembers
[Petitioner] telling her that she was going to
be his witness.  She did state that the officer
that was with [Petitioner] seemed already upset
with [Petitioner] as they entered the booking
area.

First Petition for Writ of Habeas Corpus filed in California

Supreme Court, Pet.'s Ex. B.

At the trial, Petitioner's counsel did not ask Ms. Ugbaja

whether Petitioner had told her that she would be his witness.  RT

442.  Defense counsel also did not ask Mr. Norman about his

interview with Ms. Ugbaja.  The trial judge had previously ruled

that if defense counsel introduced any of Petitioner's statements,

the prosecution could use Petitioner's prior convictions for

impeachment purposes.  RT 15-26.  Moreover, the court ruled that

testimony regarding Petitioner's statement to Ugbaja was not

admissible under California Evidence Code section 356[5] because it

"was [not] necessary for the trier of fact to understand the

witness's offered statement of what either the officer said or that

she didn't see a threat."  RT 438-39.  Thus, Petitioner's counsel

decided not to ask any questions that would elicit Petitioner's

statements, noting for the record that he did not want evidence of

---

[2] California Evidence Code section 356 states, in relevant
part, "when a detached act, declaration, conversation, or
writing is given in evidence, any other act, declaration,
conversation, or writing which is necessary to make it
understood may also be given in evidence."

Petitioner's prior convictions prejudicing the jury.  TR 441.

Petitioner's counsel also objected to the trial court's use of jury instruction CALJIC No. 17.41.1, which states:

> The integrity of a trial requires that jurors at all times during their deliberations conduct themselves as required by these instructions.  Accordingly, should it occur that any juror refuses to deliberate or expresses any intention to disregard the law or to decide the case based on penalty or punishment or any other improper basis, it is the obligation of the other jurors to immediately advise the court of the situation.

Counsel argued that the instruction improperly infused an "adversarial atmosphere" in the jury in violation of appellant's right to a fair trial.  (RT 577-578).  However, his objection was overruled, and the instruction was given.  (RT 612-613)

LEGAL STANDARD

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), a district court may grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court only if the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

"Clearly established federal law" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision."  Williams (Terry) v. Taylor, 529 U.S. 362, 402-04, 412 (2000).  A state court's decision

10

**United States District Court**
For the Northern District of California

is "contrary to" Supreme Court law if the state court "arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law," or reaches a different conclusion based on facts indistinguishable from a Supreme Court case. Williams, 529 U.S. at 412-13.  A state court's decision constitutes an "unreasonable application" of Supreme Court precedent if the state court "either (1) correctly identifies the governing rule but then applies it to a new set of facts in a way that is objectively unreasonable, or (2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable." Id. at 407.  An "unreasonable application" of federal law is different from an incorrect or erroneous application of federal law. Id. at 412.

In determining whether the state court's decision is contrary to, or involved an unreasonable application of, clearly established federal law, a federal court looks to the decision of the highest state court to address the merits of a petitioner's claim in a reasoned decision. LaJoie v. Thompson, 217 F.3d 663, 669 n.7 (9th Cir. 2000).  Where the state court gives no reasoned explanation of its decision on a petitioner's federal claim and there is no reasoned lower court decision on the claim, a review of the record is the only means of deciding whether the state court's decision was objectively reasonable. Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).  When confronted with such a decision, a federal court should conduct "an independent review of the record" to determine whether the state court's decision was an unreasonable

application of clearly established federal law.  <u>Id.</u>

     If constitutional error is found, habeas relief is warranted only if the error had a "'substantial and injurious effect or influence in determining the jury's verdict.'"  <u>Penry v. Johnson</u>, 532 U.S. 782, 795 (2001) (quoting <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 638 (1993)).

                          DISCUSSION

I. Jury Instruction No. 17.41.1

     Petitioner argues that the trial court's use of CALJIC No. 17.14.1 violated his rights to due process and a unanimous verdict as well as the free speech rights of the jurors.  In a reasoned decision, the California court of appeal denied this claim, citing <u>People v. Engelman</u>, 28 Cal. 4th 436, 443 (2002), for the proposition that there is no federal constitutional right to "absolute and impenetrable secrecy for jury deliberations in the face of juror misconduct."

     In <u>Brewer v. Hall</u>, 378 F.3d 952 (9th Cir. 2004), the Ninth Circuit rejected a petitioner's constitutional challenge to CALJIC No. 17.41.1, holding:

          It is clear . . . that the California appellate court's
          holding was not contrary to or an unreasonable
          application of clearly established Supreme Court
          precedent, because no Supreme Court case establishes that
          an instruction such as CALJIC No. 17.41.1 violates an
          existing constitutional right.

<u>Id.</u> at 955-56.

     When the court of appeal denied Petitioner's claim in 2002, <u>Brewer</u> had not yet been decided.  However, <u>Brewer</u> merely substantiated the state court's conclusion that there is no established federal constitutional right to absolute secrecy among

12

jurors.  Here, as in <u>Brewer</u>, Petitioner has pointed to no Supreme
Court precedent clearly establishing that CALJIC No. 17.41.1 --
either on its face or as applied to the facts of his case --
violated his constitutional rights.  <u>Id.</u> at 957.

Therefore, the appellate court's denial of this claim was not
contrary to or an unreasonable application of clearly established
federal law, and does not provide grounds for granting Petitioner
federal habeas relief.

II. Insufficiency of the Evidence

Petitioner argues that the lab report's finding that his blood
alcohol level was at .14 shortly after his arrest establishes that
he could not have formed the requisite specific intent to commit
the crime of resisting or deterring an executive officer under
California Penal Code § 69.  Because there is no reasoned state
decision addressing this claim, the Court will conduct "an
independent review of the record" to determine whether the state
court's decision was contrary to or an unreasonable application of
clearly established federal law.  <u>Himes</u>, 336 F.3d at 853.

The Due Process Clause "protects the accused against
conviction except upon proof beyond a reasonable doubt of every
fact necessary to constitute the crime with which he is charged."
<u>In re Winship</u>, 397 U.S. 358, 364 (1970).  Therefore, a state
prisoner who alleges that the evidence in support of his state
conviction is not sufficient to have led a rational trier of fact
to find guilt beyond a reasonable doubt states a constitutional
claim, which, if proven, entitles him to federal habeas relief.

United States District Court

For the Northern District of California

United States District Court
For the Northern District of California

<u>Jackson v. Virginia</u>, 443 U.S. 307, 321, 324 (1979).  However, a federal court reviewing a habeas petitioner's claim that the evidence was not sufficient to support the state court conviction does not determine whether the evidence established guilt beyond a reasonable doubt.  <u>Payne v. Borg</u>, 982 F.2d 335, 338 (9th Cir. 1992).  Rather, the federal court "determines only whether, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  <u>Id.</u> (quoting <u>Jackson</u>, 443 U.S. at 319).

If confronted by a record that supports conflicting inferences, a federal habeas court "must presume -- even if it does not affirmatively appear on the record -- that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."  <u>Jackson</u>, 443 U.S. at 326.  A jury's credibility determinations are therefore entitled to near-total deference.  <u>Bruce v. Terhune</u>, 376 F.3d 950, 957 (9th Cir. 2004).

California Penal Code § 69 states, in relevant part, that a person commits the offense of resisting or deterring an executive officer if he or she "attempts, by means of any threat or violence, to deter or prevent an executive officer from performing any duty imposed upon such officer by law . . ."  The California Supreme Court held in <u>People v. Gutierrez</u> that violation of this statute requires specific intent to interfere with the officer's performance of his or her duties.  28 Cal. 4th 1083, 1272-1275 (2002).  "Criminal intent, whether general or specific, may be

1   established by circumstantial evidence." <u>People v. Patino</u>, 95 Cal.

2   App. 3d 11, 27-28 (1979).

3       Petitioner argues that the jury, after being presented with

4   his involuntary intoxication defense, was irrational in finding him

5   guilty of this specific intent crime beyond a reasonable doubt.

6   However, the state court was not unreasonable in finding that the

7   jury's verdict was supported by sufficient evidence.  First, there

8   is evidence that Petitioner was angry when he was arrested, and

9   that he accused Officer Granado of racial profiling.  RT 258.  From

10  this, the jury may have inferred that Petitioner was purposely

11  trying to resist what he believed to be an unlawful arrest.  The

12  jury may also have found that Officer Granado's description of

13  Petitioner's demeanor at the time he made the threats characterized

14  it as cold and calculating, rather than drunken and belligerent,

15  behavior.

16      Moreover, after hearing expert witness Mercy Cardema testify

17  that alcohol affects different individuals differently according to

18  genetic make-up, tolerance levels, and the food contents in the

19  stomach, the jury may have found that, at a .14 blood alcohol

20  level, Petitioner could still have formed the requisite means rea

21  to commit this offense.  RT 521-22.  The jury may have also

22  considered Ms. Cardema's testimony that blood alcohol levels begin

23  to fall thirty to ninety minutes after the last drink is consumed,

24  and therefore concluded that Petitioner's blood alcohol level had

25  dropped significantly in the hour between his blood being drawn at

26  the police station and his making the threats at the jail.

27

28

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

Because the Court must defer to the jury's resolution of any factual conflict, it accepts as true the jury's determination that Petitioner had the requisite mens rea to commit this crime.  See Jackson, 443 U.S. at 326.  Thus, the state court was not unreasonable in denying Petitioner's insufficiency of the evidence claim.

III. Ineffective Assistance of Counsel (IAC) Claims

    A. IAC for Failing to File § 1181(6) Motion

Petitioner claims that his counsel was ineffective for failing to raise a motion for a new trial under California Penal Code § 1181(6), challenging the sufficiency of the evidence supporting the jury's finding that he had the requisite specific intent to commit the offense.  There is no reasoned state decision addressing this claim.  Thus, the Court will conduct "an independent review of the record" to determine whether the state court's decision was contrary to or an unreasonable application of clearly established federal law.  Himes, 336 F.3d at 853.

A claim of ineffective assistance of counsel is cognizable as a claim of denial of the Sixth Amendment right to counsel, which guarantees not only assistance, but effective assistance of counsel.  Strickland v. Washington, 466 U.S. 668, 686 (1984).  The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result.  Id.

In order to prevail on a Sixth Amendment ineffectiveness of

16

**United States District Court**
For the Northern District of California

counsel claim a petitioner must establish two things.  First, he must establish that counsel's performance was deficient, that is, that it fell below an "objective standard of reasonableness" under prevailing professional norms.  _Id._ at 687-88.  However, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."  _Id._ at 690. Second, he must establish that he was prejudiced by counsel's deficient performance, that is, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  _Id._ at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome.  _Id._  In order to show prejudice under _Strickland_ from failure to file a motion, a petitioner must show that (1) had his counsel filed the motion, it is likely that the trial court would have granted it as meritorious, and (2) had the motion been granted, it is likely that there would have been an outcome more favorable to him.  _Wilson v. Henry_, 185 F.3d 986, 990 (9th Cir. 1999).

In deciding whether to grant a motion under California Penal Code § 1181(6), a trial court must make an independent evaluation of the evidence to determine whether that evidence as a whole is sufficient to sustain a verdict.  _People v. Robarge_, 41 Cal. 2d 628, 633 (1953); _People v. Sheran_, 49 Cal. 2d 101, 108 (1957).  The trial court should consider the proper weight to be accorded to the evidence and then decide whether or not, in its opinion, there is sufficient credible evidence to support the verdict.  _People v._

United States District Court
For the Northern District of California

Risenhoover, 70 Cal. 2d 39 (1968).  However, in making its determination, the trial court is guided by a "presumption in favor of the correctness of the verdict and proceedings supporting it." People v. Davis, 10 Cal. 4th 463, 524 (1995).

Petitioner has failed to demonstrate that the trial court was likely to have found insufficient evidence to sustain the jury's verdict.  As discussed above, this Court has conducted an independent review of the evidence and found that it could reasonably support a finding of specific intent.  Because the trial court would have presumed the correctness of the verdict, it most likely would not have granted the motion for a new trial. Therefore, Petitioner cannot show that counsel was ineffective for failing to file a motion for a new trial.  Thus, the state habeas court's denial of this claim was not contrary to or an unreasonable application of clearly established federal law, and this claim does not provide grounds for granting the petition.

B. IAC for Failing to Elicit Exculpatory Testimony

Petitioner also asserts that defense counsel failed to ask Ms. Ugbaja or Mr. Norman whether Ms. Ugbaja heard Petitioner make any threats or whether Petitioner told her that she would be his witness.  This, he argues, constituted IAC because it prevented the jury from hearing exculpatory evidence.

The state habeas court denied this claim in a reasoned decision, finding that "the exculpatory value of the statement was low [because] Ugbaja apparently was not present when the alleged threat was actually directed at the officer."  Order of Superior

18

**United States District Court**
For the Northern District of California

Court Denying Amended Petition at 2-3.

In his traverse, Petitioner contends that Ms. Ugbaja was present when he allegedly threatened Officer Granado.  Traverse at 11-12.  He therefore argues that her testimony that she did not hear him make any threats was exculpatory evidence that his counsel should have elicited at trial.  However, defense counsel did ask Ms. Ugbaja whether she heard Petitioner make any threats, and the witness answered that she did not.  RT 432-433.

Therefore, the only testimony that defense counsel failed to elicit was Petitioner's statement to Ms. Ugbaja that she would be his witness.  However, this statement would have had little impact on the jury's decision if, as the state habeas court found, Ms. Ugbaja was not actually present when the threat was made.  In that case, "the offer of proof [would have] indicated that Ugbaja was only present when Petitioner denied making such a threat."  Ex. 9 at 2-3.

The state court not unreasonably found that Ms. Ugbaja was not present when the Petitioner threatened Officer Granado.  During the preliminary hearing, Officer Granado testified that Petitioner made the threats when he and Petitioner were alone in a small booking room.  CT 27.  At the trial, Officer Granado testified that the statements were made "prior to taking [Petitioner] to the processing area."  RT 267.  Therefore, Officer Granado's testimony consistently indicated that Petitioner had already made the threats by the time they entered the main processing area where Ms. Ugbaja worked.

Moreover, although defense counsel noted the short time span between 6:25 a.m., when Officer Granado noted in his paperwork that the threats were made, and 6:30 a.m., when Ms. Ugbaja filled out her paperwork, this is not inconsistent with the prosecution's theory that these events took place in two different rooms, because Officer Granado testified that it only took "a couple of minutes . . . [to] pass through into the processing area."  RT 272, 441.

Ms. Ugbaja's testimony also supports the state habeas court's finding that she was not present when Petitioner made the alleged threats.  Ms. Ugbaja testified that there were "about three rooms" between the small booking rooms where police officers first take prisoners and the main screening room where the nurses are located. RT 437.  She also stated in her interview with Mr. Norman that the officer accompanying Petitioner at the time of her medical screening "seemed already upset with [Petitioner] as they entered the booking area," allowing an inference that the threats were made before they entered the room.  Ex. 12, Pet.'s Ex. B.  Therefore, the state habeas court's finding that Ms. Ugbaja was not a percipient witness to the alleged threat was not unreasonable.

As stated above, if Ms. Ugbaja was not a percipient witness, her testimony would have revealed only that, after Petitioner had already committed the alleged offense, he told her that she would be his witness.  It is unlikely that eliciting this evidence would have changed the jury's verdict.  Accordingly, when defense counsel weighed the exculpatory value of questioning Ms. Ugbaja about Petitioner's statement, especially considering the prejudice that

**United States District Court**
For the Northern District of California

may have resulted from the prosecutor's being able to introduce evidence of Petitioner's priors, he may have reasonably determined that the testimony would do more harm than good.  Thus, his decision not to elicit this testimony was a reasonable strategic decision and his performance was not deficient or prejudicial under Strickland.

Therefore, the state habeas court's denial of this claim was not contrary to or an unreasonable application of clearly established federal law, and it does not provide grounds for granting this petition.

CONCLUSION

Based on the foregoing, the Court DENIES the petition for a writ of habeas corpus (Docket No. 1).  Judgment shall enter accordingly.  The parties shall bear their own costs.  The clerk shall close the file.

IT IS SO ORDERED.


Dated: 8/22/08                     _____
                                   CLAUDIA WILKEN
                                   United States District Judge

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

GREGORY L BEDFORD,

        Plaintiff,

  v.

S ORNOSAI et al,

        Defendant.
_____/

Case Number: CV06-00748 CW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on August 22, 2008, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Gregory L. Bedford T-22294
San Quentin State Prison
San Quentin,  CA 94974

Michele Joette Swanson
CA State Attorney General's Office
455 Golden Gate Avenue
Suite 11000
San Francisco,  CA 94102-7004

Dated: August 22, 2008

                    Richard W. Wieking, Clerk
                    By: Sheilah Cahill, Deputy Clerk

**United States District Court**
For the Northern District of California